# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 6, 2012 Session

## STEPHEN MICHAEL WEST, ET AL. v. DERRICK SCHOFIELD, in his official capacity, ET AL.

### Direct Appeal from the Chancery Court for Davidson County
No. 10-1675-I     Claudia Bonnyman, Chancellor

---

### No. M2011-00791-COA-R3-CV - Filed April 11, 2012

---

Plaintiffs filed an action for declaratory judgment and injunctive relief, asserting the lethal injection protocol used to carry-out the death penalty in Tennessee violated constitutional prohibitions against cruel and unusual punishment. The trial court entered judgment in favor of Plaintiffs. While the matter was pending in the Tennessee Supreme Court, the State revised the protocol. The supreme court remanded the matter for further proceedings. The trial court entered judgment in favor of the State. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Stephen M. Kissinger and Stephen A. Ferrell, Knoxville, Tennessee, and Roger W. Dickson, Chattanooga, Tennessee, for the appellant, Stephen M. West.

C. Eugene Shiles, Jr., and Howell G. Clements, Chattanooga, Tennessee, for the appellant, Billy Ray Irick.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, and Mark A. Hudson, Senior Counsel, for the appellee, Derrick Schofield, in his official capacity.

### OPINION

This lawsuit concerns the constitutionality of the three-drug protocol, as revised in November 2010, used to effectuate the death penalty by lethal injection in Tennessee.

Plaintiffs Stephen Michael West (Mr. West) and Billy Ray Irick (Mr. Irick; collectively "Plaintiffs") are condemned inmates who are scheduled to be executed by lethal injection. The current appeal arises from Plaintiffs' action for declaratory judgment and injunctive relief, asserting the three-drug lethal injection protocol constitutes cruel and unusual punishment in violation of the United States Constitution and Constitution of Tennessee. When the action was filed, the lethal injection protocol involved the intravenous injection of 5 grams of sodium thiopental, an anesthesia, followed by 100 milligrams of pancuronium bromide, followed by 200 milliequivalents of potassium chloride. The protocol did not include checks for consciousness after the delivery of the sodium thiopental. It is undisputed that the administration of pancuronium bromide and potassium chloride without proper anaesthesia causes extreme pain and suffering and results in death by suffocation. The trial court determined the protocol violated the constitutional prohibitions against cruel and unusual punishment because it allowed the possibility of death by suffocation due to the effects of pancuronium bromide if the sodium thiopental failed to render the inmate unconscious, or failed to ensure that the inmate remained unconscious when the second and third drugs are administered. In November 2010, the State revised the protocol to include checks for consciousness. The trial court determined that the revised three-drug protocol satisfies the prohibition against cruel and unusual punishment. Plaintiffs appeal. We affirm.

## *Issues Presented*

Plaintiffs present the following statement of the issues for our review:

(1)     The evidence preponderates against the Chancery Court's determination that the "check for consciousness," added to Tennessee's unconstitutional three-drug lethal injection protocol, eliminates the substantial risk that inmates will be conscious during the execution process.

(2)     The evidence preponderates against the Chancery Court's determination that there is not a feasible and readily available alternative procedure to insure unconsciousness during the execution process and negate any objectively intolerable risk of severe suffering or pain.

## *Standard of Review*

We review the trial court's findings of fact *de novo* on the record, with a presumption of correctness, and will not reverse those findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). Insofar

as the trial court's determinations are based on its assessment of witness credibility, we will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

### *Background*

On November 7, 2000, the Tennessee Supreme Court set an execution date of March 1, 2001, for Mr. West, who was convicted for the murder of a fifteen-year old girl and her mother. In February 2001, Mr. West signed an affidavit electing electrocution as the method of execution. Mr. West filed a petition for *habeus corpus* in the federal court, and the execution was stayed. In April 2007, the Tennessee Department of Correction ("the TDOC") issued new execution protocols for electrocution and lethal injection. The new protocol included a "new election form." In July 2010, the supreme court ordered that Mr. West would be executed on November 9, 2010.

Mr. West filed a complaint for declaratory judgment and injunctive relief in the Chancery Court for Davidson County October 18, 2010. In his complaint, Mr. West asserted that Defendants Gayle Ray, Commissioner of the TDOC; Ricky Bell, Warden of Riverbend Maximum Security Institution; David Mills, Deputy Commissioner of the TDOC; Reuben Hodge, Assistant Commissioner of Operations; and John Doe Executioners 1-100 (hereinafter, "the State") intended to execute him by electrocution in violation of Tennessee Code Annotated § 40-23-114(a); in violation of the Eighth and Fourteenth Amendments to the United States Constitution; and in violation of the Tennessee Constitution Article 1, § 16. Mr. West prayed for a declaration that his "old election form" electing execution by electrocution, which he asserted he had signed in 2001 but had rescinded, be declared without force and effect, and that Defendants must present the "new election form" from the current protocol. He also prayed for a declaration that death by electrocution under Tennessee's new protocol violated the United States Constitution and the Constitution of Tennessee. He moved for a temporary injunction enjoining Defendants from carrying out his sentence of death by means of electrocution. On October 25, 2010, the trial court entered an order stating that Mr. West had withdrawn his motion for temporary injunction based upon Defendants' response. The trial court stated that Mr. West was "no longer bound by the 2001 affidavit . . . choosing electrocution as the method of death[,]" and that Mr. West was "no longer required to elect his method of execution."

On October 25, 2010, Mr. West filed an amended complaint for declaratory judgment and injunctive relief. In his amended complaint (hereinafter, "complaint"), Mr. West stated that he was scheduled to be executed by lethal injection on November 9, 2010. He sought a declaration that the State's three-drug lethal injection protocol is unconstitutional. He asserted that Tennessee's three-drug protocol, which then consisted of rapid-fire sequential bolus injections of sodium thiopental, pancuronium bromide, and potassium chloride, is not "substantially similar" to the protocol upheld by the United States Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008). He asserted multiple insufficiencies of the protocol, including that it "lack[ed] medically necessary safeguards, thus increasing the risk that Mr. West will suffer unnecessary pain and prolonged death during the lethal injection process." Mr. West asserted that the protocol failed to provide for qualified personnel to administer the drugs, and that there was no procedure for ensuring that the first drug, the anesthetic, adequately sedated the inmate prior to the administration of the second and third drugs. Mr. West referenced numerous non-Tennessee executions to support his argument that the protocol may result in unnecessary pain and suffering. He also asserted that post-mortem test results indicated that three inmates executed in Tennessee, Robert Coe, Philip Workman, and Steve Hunley, suffered death by suffocation as a result of inadequate anesthesia. Mr. West asserted that the "variables that may have undermined the findings of the *Lancet* article[,]" the study that was reviewed by the Supreme Court in *Baze*, were not present in the reports from executions in Tennessee. Mr. West relied on affidavits of Dr. David Lubarsky, one of the authors of the *Lancet* article examined by the United States Supreme Court in *Baze*, in support of his assertions that the level and manner of administration of sodium thiopental, the anesthesia used in Tennessee's lethal injection protocol, was not sufficient to ensure unconsciousness.

The trial court denied Mr. West's motion for temporary injunction on the grounds that the court lacked jurisdiction to supersede or enjoin the Tennessee Supreme Court's July 2010 order setting Mr. West's execution. We denied permission for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. On November 6, 2010, the supreme court granted Mr. West's application for permission to appeal pursuant to Rule 11. The supreme court agreed with the trial court and this Court that the trial court was without authority to stay the supreme court's order. However, the supreme court did not agree that time constraints prevented the trial court from taking proof and issuing a declaratory judgment on the issue of whether Tennessee's three-drug protocol constituted cruel and unusual punishment because the manner by which the sodium thiopental was prepared and administered failed to produce unconsciousness or anesthesia prior to the administration of the second and third drugs. The supreme court vacated the trial court's order and remanded the matter for further proceedings. In so doing, the supreme court observed that the State had not been afforded the opportunity to present evidence to counter the opinion testimony of Dr. Lubarsky, and that the record currently before the court contained no evidence defending the adequacy of the existing procedures. The supreme court reset the date of Mr. West's

-4-

execution to November 30, 2010.

On November 12, 2010, Billy Ray Irick (Mr. Irick) filed a motion for permissive intervention in the case, and a complaint for declaratory judgment and injunctive relief. In his complaint, Mr. Irick stated that he had been convicted by a jury of two counts of rape of a minor and felony murder, and that his conviction was affirmed by the Tennessee Supreme Court in November 1988. Mr. Irick asserted that he was scheduled to be executed on December 7, 2010, and that his execution was scheduled to be carried out by the same three-drug protocol. The trial court granted Mr. Irick's motion to intervene on November 19, 2010.

The matter was heard by the trial court on November 19, 2010. Following the hearing, the trial court issued a bench ruling which it incorporated into an order granting a declaratory judgment to Plaintiffs on November 22, 2010. In its ruling, the trial court found that Plaintiffs had carried their burden to demonstrate that the three-drug protocol was cruel and unusual because it allowed death by suffocation while the prisoner is conscious. Upon review of the medical evidence, the trial court found that Plaintiffs had "carried [their] burden to show that the first injection of 5 grams of sodium thiopental followed by rapid injection of the second drug will result in the inmate's consciousness during suffocation." The trial court determined that Plaintiffs had demonstrated that "the Tennessee protocol does not insure that the prisoner is unconscious before the paralyzing drug . . . the second [drug] . . . is injected and becomes active in the body."

On November 23, Plaintiffs filed motions in the supreme court to vacate or modify its orders of execution. On November 24, 2010, the State filed a response in opposition to Mr. West's motion and stated that the lethal injection protocol had been revised to include checks for consciousness prior to the administration of the second drug. The State attached a copy of the revised protocol to its motion. The supreme court denied Mr. West's motion to vacate or modify the order of execution because the revised protocol appeared to address the trial court's reasons for finding the previous protocol unconstitutional. Mr. West filed a motion to reconsider on November 26, asserting that he was not afforded an opportunity to reply to the State's response and to address the issue of whether the revisions to the protocol eliminated the constitutional deficiencies.

On November 29, 2010, the supreme court entered an order granting Plaintiffs' motions to stay, and made the order effective throughout the pendency of any appeals and until the State files a motion to reset the execution dates. In its November 29 order, the supreme court stated that the trial court had not been given the opportunity to consider, in the first instance, whether the revised protocol eliminates the constitutional deficiencies that the trial court had identified in the previous protocol. It remanded the matter to the trial court for further consideration.

The State filed a motion to alter or amend in the trial court on December 20, 2010. In its motion, the State moved the trial court to make additional findings based on the November 24, 2010, revisions to the protocol to include an assessment of the consciousness of the condemned inmate prior to the administration of the second injection. The State moved the trial court to alter or amend its judgment based upon the November 24 revisions.

The matter was set to be heard on January 21, 2011. Following a hearing on January 21, 2011, the parties agreed that the court should rule on the matter upon the record and without a further evidentiary hearing or further proof. On January 31, the trial court granted the State's motion to amend its findings of fact in light of the revisions to the lethal injection protocol. The trial court made the revised protocol and facts asserted by the State in its motion part of the record in the cause. It also made Dr. Lubarsky's January 2011 affidavit, in which he responded to the revisions of the protocol to check for consciousness, part of the record.

The trial court entered final judgment in the matter on March 24, 2011. In its final order, the trial court determined that, applying the standards established by the plurality in *Baze v. Rees*, 553 U.S. 35 (2008), the revised lethal injection protocol is constitutional and does not violate the prohibition against cruel and unusual punishment. The trial court further found that, based on the record, Plaintiffs did not carry their burden to demonstrate that a proposed one-drug protocol or any other protocol is feasible, readily implemented and significantly reduces the substantial risk of severe pain presented by the revised lethal injection protocol. The trial court incorporated its bench ruling into the order, and entered final judgment in favor of the State. Plaintiffs filed timely notices of appeal to this Court.

## *Discussion*

In their brief to this Court, Plaintiffs assert that Tennessee's current three-drug lethal injection protocol, as amended to include a check for consciousness, creates an objectively intolerable risk of substantial harm that qualifies as cruel and unusual punishment. It asserts that it is "undisputed that Tennessee's three-drug protocol causes death by suffocation." Plaintiffs assert that the dispositive question before the trial court on remand was whether the check for consciousness eliminates the constitutional deficiencies of the protocol. Plaintiffs contend that the same evidence that proves that the protocol allows death by suffocation demonstrates that the check for consciousness included in the amended protocol will not determine whether the prisoner will be, or will become, conscious when he begins to suffocate. Plaintiffs contend that the State did not challenge these determinations, and that the evidence preponderates against the trial court's finding that Plaintiffs did not come forward with "sufficient proof that the consciousness checks do not work." Plaintiffs assert that the administration of five grams of sodium thiopental in the manner provided by the

three-drug protocol will not render the prisoner unconscious, and that the checks for consciousness will not reduce the substantial risk that a prisoner will be or will become conscious when the second drug is administered. Plaintiffs also assert that the evidence demonstrates that a feasible and readily available alternative method of execution exists which significantly reduces the risk of unnecessary pain and suffering. They assert that a one-drug protocol is a feasible, readily implemented alternative.

We begin our discussion by construing the trial court's judgement of November 22 and the supreme court's November 29 order of remand. We disagree with Plaintiffs' contention that orders filed in this case stand for the proposition that it is undisputed that the previous protocol in fact causes death by suffocation. The State has continued to dispute Plaintiffs' assertion throughout this litigation. The trial court determined that there was a substantial risk of severe pain associated with the protocol because an inmate could be conscious when the second and third drugs were administered. While Plaintiffs' motions were pending in the supreme court, the State revised the protocol to include checks for consciousness, and the supreme court remanded the matter to the trial court for further proceedings in light of the revisions. At the February 16, 2011, hearing on remand, the trial court stated that it had found that the prior three-drug protocol "constituted cruel and unusual punishment because the sodium thiopental was not adequate to avoid the *intolerable risk* that the prisoner . . . became conscious after the first drug was administered according to the execution protocol." (Emphasis added.) Moreover, the supreme court neither reviewed nor opined on the trial court's judgment. Rather, the supreme court's order on remand, as we perceive it, required the trial court to determine 1) whether the November 24, 2010, revisions to the three-drug protocol eliminates the constitutional deficiencies that the trial court identified, i.e., the intolerable risk that a condemned inmate might not be unconscious when the second drug is administered, and 2) whether the revised protocol is constitutional. Citing *Baze v. Rees*, 553 U.S. at 52-53, the supreme court stated that Plaintiffs carried the "heavy burden" to "demonstrate that the revised protocol imposes a substantial risk of serious harm[.]" The supreme court further stated that Plaintiffs "must either propose an alternative method of execution that is feasible, readily implemented, and which significantly reduces the substantial risk of severe pain . . . or demonstrate that no lethal injection protocol can significantly reduce the substantial risk of severe pain."

The November 24, 2010, revisions to the lethal injection protocol provide, in relevant part:

5. After 5 grams of sodium thiopental and a saline flush have been dispensed, the Executioner shall signal the Warden, and await further direction from the Warden.

6.    At this time the Warden shall assess the consciousness of the condemned inmate by brushing the back of his hand over the inmate's eyelashes, calling the condemned inmate's name, and gently shaking the condemned inmate. Observation shall be documented. If the condemned inmate is unresponsive, it will demonstrate that the inmate is unconscious, and the Warden shall direct the Executioner to resume with the administration of the second and third chemicals. If the condemned inmate is responsive, the Warden shall direct the Executioner to switch to the secondary IV line.

On remand, the trial court found that, under the standards enunciated in *Baze*, the revised protocol does not violate the prohibition against cruel and unusual punishment because "[t]he alternative that the State presented, the consciousness checks, seem to take care of the problem." The trial court stated that Plaintiffs had not "come forward with an alternative or with sufficient proof that the consciousness checks do not work." The trial court found stated that it had "read and reread the record carefully[,]" and that there "is little in the record addressing the effectiveness of the basic manual consciousness checks in the revised protocol." The trial court noted Dr. Lubarsky's affidavit opining that the revised protocol will not assure that the condemned inmates will remain unconscious as they experience the effects of the second and third drugs. The trial court also noted the testimony of the State's expert, Feng Li, M.D., J.D., Ph. D (Dr. Li), who stated that, if the level of sodium thiopental is low, "he would not be surprised that the inmate would respond to verbal stimuli." The trial court found "that simple manual checks for consciousness of another human being are common sense[,]"and that the revised protocol appeared to address the "consciousness issues." The trial court further found that the consciousness checks contained in the revised protocol are "feasible, readily implemented, and . . . will significantly reduce the substantial risk of severe pain." The trial court found that there was no testimony addressing a one-drug protocol, and that Plaintiffs did "not advocate for this proposal because [P]laintiffs do not wish to choose their method of execution and because the [P]laintiffs do not know enough about it." The trial court disagreed with Plaintiffs' contention that the State had conceded that a one-drug protocol is "the Constitutional lethal drug protocol." The trial court found that the record before it did not demonstrate that a one-drug protocol would result in a quick death, and that Plaintiffs had failed to carry their burden to demonstrate that any other protocol is as a matter of fact feasible, readily implemented, and would substantially reduce the risk of severe pain.

Plaintiffs assert in their brief that the prior lethal injection protocol was not unconstitutional because it lacked a "check for consciousness" but because "it does not render the inmate unconscious after the second and third pain-producing drugs are administered." They submit that "[m]erely checking for consciousness will not render an

-8-

inmate unconscious, therefore, adding the check does not eliminate the constitutional deficiencies." Although we agree that the likelihood that an inmate would not be conscious when the second drug was administered was the basis upon which the trial court found the prior protocol to be unconstitutional, we do not agree that the addition of a procedure to check for consciousness does not cure the constitutional deficiency.

> Some risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions.
>
> . . . .
>
> Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of "objectively intolerable risk of harm" that qualifies as cruel and unusual.

*Baze v. Rees*, 553 U.S. 35, 47 - 50 (2008). Additionally, "a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." *Id*. at 51. Rather, "the proffered alternatives must effectively address a "'substantial risk of serious harm.'" *Id*. at 52 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). A proffered

> alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain. If a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a State's refusal to change its method can be viewed as "cruel and unusual" under the Eighth Amendment.

Id. (footnote omitted). The *Baze* Court noted that the "series of sodium thiopental, pancuronium bromide, and potassium chloride, in varying amounts" was used by thirty states and the federal government, and opined that a protocol cannot be viewed as "objectively intolerable" when it is so widely used. *Id*. at 53. The Court further stated that Kentucky's "continued use of the three-drug protocol cannot be viewed as posing an 'objectively intolerable risk' when no other State has adopted the one-drug method and petitioners proffered no study showing that it is an equally effective manner of imposing a death sentence." *Id*. at 57. The Supreme Court noted,

> Indeed, the State of Tennessee, after reviewing its execution procedures,

rejected a proposal to adopt a one-drug protocol using sodium thiopental. The State concluded that the one-drug alternative would take longer than the three-drug method and that the "required dosage of sodium thiopental would be less predictable and more variable when it is used as the sole mechanism for producing death...."

*Id*. at 57 (quoting *Workman v. Bredesen*, 486 F.3d 896, 919 (6th Cir. 2007)).

The Supreme Court did not opine as to the accuracy of Tennessee's conclusion, but "note[d] simply that the comparative efficacy of a one-drug method of execution is not so well established that Kentucky's failure to adopt it constitutes a violation of the Eighth Amendment." *Id.*

Upon review of the record in this case, we cannot say the evidence preponderates against the trial court's finding that the addition of the check for consciousness in the revised three-drug lethal injection protocol eliminates a substantial risk that the condemned inmate might be or may become conscious before the second drug is administered, and therefore suffer severe and unnecessary pain. As the State asserts in its brief, the lack of monitoring for consciousness was among the deficiencies of the three-injection protocol identified by Plaintiffs in the trial court, and it was the basis upon which the trial court declared the protocol unconstitutional. Additionally, a check for consciousness was a step Plaintiffs urged was necessary to cure the deficiency. In the affidavit filed by Plaintiffs in January 2011, Dr. Lubarsky stated, with a reasonable degree of medical certainty, that the addition of the check for consciousness "does not in any way assure that Tennessee inmates will remain unconscious as they experience the effects of pancuronium bromide and potassium chloride, nor does it reduce the risk that an inmate will remain unconscious as they experience the effects of pancuronium bromide and potassium chloride." Dr. Lubarsky stated that the implication that an inmate who is unresponsive to mild stimuli will remain unconscious and unresponsive to the far more painful effects caused by the second and third injections is incorrect. Dr. Lubarsky also asserted that the revised protocol contains no requirements that the Warden be trained with respect to what constitutes a response to given stimuli or how to detect a response. He further asserted that, even if the inmate was determined to be unconscious following the administration of an additional 5 grams of sodium thiopental, there is no assurance that the inmate will remain unconscious following the administration of pancuronium bromide and potassium chloride. He stated:

There have been no studies regarding the levels of unconsciousness obtained through the administration of either 5 or 10 grams of sodium thiopental in the manner required under the Tennessee execution protocol. The serum thiopental levels obtained following Tennessee executions indicate that the

administration of 5 grams of sodium thiopental produces serum thiopental levels which are only a fraction of those sufficient to assure unconsciousness following the administration of pancuronium bromide and potassium chloride. A repetition of that ineffective procedure cannot assure a sufficient level of unconsciousness.

Dr. Lubarsky did not opine as to the dosage of sodium thiopental necessary to eliminate any risk that an inmate would not remain unconscious throughout the execution procedure, however. The trial court found that, during the initial proceedings,

[P]laintiffs did not demonstrate that there was any particular method to ensure that the [P]laintiffs remained unconscious when the second and third drugs were administered, but . . . consistently pointed out that other states do check for consciousness before the second drug is injected.

The State asserts that 36 states have adopted the three-drug lethal injection method of execution, and that 19 of them use checks for consciousness similar to those adopted in Tennessee. The State's expert, Dr. Li, the senior associate medical examiner for Davidson County, countered Dr. Lubarsky's post-mortem examinations of Mr. Workman, Mr. Coe, and Mr. Hunley. Dr. Li testified that the levels of sodium thiopental in the blood stream of a condemned inmate would be much higher at the time of execution than at the time of an autopsy performed later. He further testified that, although each person would metabolize the drug differently, in general the concentration of the drug in the blood decreases over time. Dr. Li testified that 5 grams of sodium thiopental is lethal, and that 5 grams is more than ten times the amount given in a surgical setting.

Edwin Voorhies (Mr. Voorhies), the deputy director for the Office of Prisons of the Ohio Department of Rehabilitation, testified that in 2009 Ohio adopted a one-drug protocol that utilizes five grams of sodium thiopental administered intravenously in five syringes. Mr. Voorhies testified that Ohio had performed nine executions using the one-drug protocol, that he had been present at the executions, and that 5 grams of sodium thiopental was adequate to insure the death of condemned inmate in each case. Mr. Voorhies testified that the average time from the beginning of the first injection of sodium thiopental to the time of death pronounced by the coroner, including time for medical assessment by the medical team member and the coroner, was 11.5 minutes. He testified that the inmates appeared to lose consciousness at the conclusion of the administration of the first syringe, and by the end of the administration of the second gram of sodium thiopental there were "no visible signs of the chest rising and falling." Mr. Voorhies testified that autopsies were not performed on the nine inmates executed under the one-drug protocol, and that the level of sodium thiopental in the blood as a result of the administration of the drug was not known. The evidence does

not preponderate against the trial court's finding that Plaintiffs failed to carry their burden to demonstrate that the administration of 5 grams of sodium thiopental, followed by a check for consciousness, presents an objectively substantial risk that a condemned inmate will be or become conscious when the second drug is administered.

The evidence also does not preponderate against the trial court's determination that Plaintiffs failed to demonstrate that a feasible and readily available alternative method of execution exists which significantly reduces the risk of unnecessary pain and suffering. Dr. Lubarsky did not opine as to a preferable execution protocol in his January 2011 affidavit. The trial court found that Plaintiffs "assert instead, without agreeing except in theory, that the State decided the one-drug protocol using sodium thiopental only, is a feasible alternative." The trial court found that Plaintiffs did not "necessarily agree" that a one-drug protocol would avoid a risk of unnecessary pain, "but take the position that the one-drug protocol is an obvious solution, which must be tested to see if it is in fact a solution." In its brief to this Court, Plaintiffs assert that the State has determined that a one-drug protocol is a readily implemented, feasible alternative. Without conceding that the one-drug protocol considered by the State would not violate constitutional prohibitions against cruel and unusual punishment, Plaintiffs submit that the fact that the State has considered the alternative demonstrates that the trial court erred by determining that a one-drug protocol is not a readily available, feasible alternative method of execution.

The Supreme Court opined in *Baze*:

> Much of petitioners' case rests on the contention that they have identified a significant risk of harm that can be eliminated by adopting alternative procedures, such as a one-drug protocol that dispenses with the use of pancuronium and potassium chloride, and additional monitoring by trained personnel to ensure that the first dose of sodium thiopental has been adequately delivered. Given what our cases have said about the nature of the risk of harm that is actionable under the Eighth Amendment, a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative.

*Baze v. Rees*, 553 U.S. 35, 51 (2008).

Plaintiffs in this case have failed to demonstrate or even argue that adopting a one-drug protocol would cure the constitutional challenges to a lethal injection protocol. Rather, they assert that the State has conceded that a one-drug protocol is constitutional, and that is available as an alternative method. Without opining on the merits of a one-drug protocol, we agree with the trial court that Plaintiffs have failed to demonstrate that a one-drug

protocol would eliminate a significant risk of harm.

As the Supreme Court has observed:

> Reasonable people of good faith disagree on the morality and efficacy of capital punishment, and for many who oppose it, no method of execution would ever be acceptable. But as Justice Frankfurter stressed in *Resweber*, "[o]ne must be on guard against finding in personal disapproval a reflection of more or less prevailing condemnation." 329 U.S., at 471, 67 S.Ct. 374 (concurring opinion). This Court has ruled that capital punishment is not prohibited under our Constitution, and that the States may enact laws specifying that sanction. "[T]he power of a State to pass laws means little if the State cannot enforce them." *McCleskey v. Zant*, 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). State efforts to implement capital punishment must certainly comply with the Eighth Amendment, but what that Amendment prohibits is wanton exposure to "objectively intolerable risk," *Farmer*, 511 U.S., at 846, and n. 9, 114 S.Ct. 1970, not simply the possibility of pain.

*Baze v. Rees*, 553 U.S. 35, 61-62 (2008).

Plaintiffs have simply failed to carry their "heavy burden" to demonstrate that the lethal injection protocol as revised in November 2010 constitutes wanton exposure to an objectively intolerable risk of severe and unnecessary pain and suffering. Plaintiffs also have failed to carry their burden to demonstrate that an alternative method of execution is feasible, readily implemented, and significantly reduces the substantial risk of severe pain, or to demonstrate that no lethal injection protocol can significantly reduce the substantial risk of severe pain.

### *Holding*

In light of the foregoing, we affirm the judgment of the trial court. Costs of this appeal are charged to Appellants, Stephen Michael West and Billy Ray Irick.

_____
DAVID R. FARMER, JUDGE