# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### December 12, 2012 Session

## CLEMENTINE NEWMAN v. ALLSTATE INSURANCE COMPANY

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT00451006      Robert Samual Weiss, Judge**

**No. W2011-02314-COA-R3-CV - Filed December 27, 2012**

Plaintiff appeals a jury verdict awarding her damages in the amount of approximately $5,000 in her action for damages against her uninsured motorist insurance carrier.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Clementine Newman, *Pro Se*.

Michael Mansfield and John O. Alexander, Memphis, Tennessee, for the appellee, Allstate Insurance Company

## MEMORANDUM OPINION[1]

This dispute arises from an August 2005 motor vehicle accident in which Plaintiff Clementine Newman (Ms. Newman) was struck from behind by an unidentified driver in a hit-and-run accident on Sam Cooper Boulevard in Memphis.  At the time of the accident Ms. Newman was 51 years of age.  She was operating a 1994 Toyota Tercel that she purchased in 2000 for a purchase price of approximately $3,000.  In August 2006, Ms. Newman filed

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

an action for damages against Allstate Insurance Company ("Allstate"), her uninsured motorist insurance carrier, and "John Doe," the unidentified driver, in the Circuit Court for Shelby County. In her complaint, Ms. Newman alleged that her vehicle was a total loss as a result of the collision, and that she had suffered bodily injuries and loss of health and quality of life. She also alleged that she had required continuous medical care since the accident, which caused her to lose her employment and benefits. She asserted that Allstate had failed to make any payments under her uninsured motorist coverage. Ms. Newman sought relief in excess of $25,000.

Allstate answered in October 2006, asserting that it was without sufficient information to determine whether the automobile operated by John Doe was uninsured/underinsured, asserting its right to subrogation against any insurance benefits, and moving to sever issues of coverage from matters to be heard by the jury. It admitted that it had made no payments to Ms. Newman and averred that Ms. Newman had rejected its offer of settlement with respect to property damage. Allstate generally denied the allegations asserted by Ms. Newman.

In May 2007, Ms. Newman filed a motion to amend her complaint. In February 2008, the trial court granted Ms. Newman's motion to amend with respect to John Doe and denied it with respect to Allstate. In her amended complaint, Ms. Newman asserted that she was injured as a result of a violent collision caused by the gross negligence of John Doe; that she had been taken to the hospital emergency room for treatment following the collision; that she had suffered injuries as a result of the collision resulting in medical bills and a loss of earnings. She sought a judgment in the amount of $30,000 and a trial by jury. She further sought punitive damages in the amount of $250,000.

Allstate moved the court to sever Ms. Newman's claims against it and John Doe, and for separate trials. In April 2008, the trial court entered a consent order on the motion wherein the parties agreed to sever Ms. Newman's contract claim against Allstate from her tort claim against John Doe, and further agreed to a separate trial of that portion of her complaint relating to uninsured/underinsured motorist coverage.

Lengthy proceedings with respect to a motion to withdraw filed by Ms. Newman's counsel and granted by the trial court in March 2010 followed. In September 2010, this Court denied Ms. Newman's application for permission for interlocutory appeal pursuant to Rule 9 of the Rules of Appellate procedure upon determining that the trial court had not granted permission to seek an interlocutory appeal. By order entered October 29, 2010, we denied Ms. Newman's motion to reconsider. Ms. Newman proceeded *pro se* thereafter.

On October 12, 2010, Allstate made on offer of judgment in the amount of

$31,542.76.  In its offer, Allstate asserted its offer represented payment for personal injuries in the amount of $29,000 and the payment of medical costs in the amount of $1,000.  Allstate asserted its offer exhausted the personal injury benefits provided by Ms. Newman's policy of insurance.  Allstate further offered property damage in the amount of $1,542.76.  Ms. Newman apparently refused the offer of judgment, and in July 2011 Allstate filed the depositions of Dr. Raymond Gardocki (Dr. Gardocki) and Dr. Santos Martinez (Dr. Martinez).  On July 18, 2011, Allstate filed a pre-trial brief and motions in limine.  In its brief, Allstate admitted liability and stated that it would most likely defend the action against John Doe in order to preserve its right of anonymity before the jury.  Allstate further asserted that Ms. Newman's uninsured motorist coverage was limited to $30,000 per person per accident.  It further stated that after being treated in the emergency room and released on the day of the accident, Ms. Newman was treated by several physicians, including, in addition to Dr. Gardocki and Dr. Martinez, her family physician, an optometrist, a rheumatologist, a psychiatrist, a neurologist, a physiatrist, and a cardiologist.  Allstate asserted that Ms. Newman had deposed only Dr. Gardocki and Dr. Martinez, both of Campbell's Clinic, and that only Dr. Gardocki had stated that his treatment was necessitated by the accident.  Allstate asserted that Dr. Gardocki had stated that only Ms. Newman's "whiplash" type symptoms in her neck and back were related to the accident, and that he could not say that any other complaints were related to the accident.  It asserted that Dr. Gardocki testified that bills relating to the treatment of Ms. Newman for her complaints or pain related to the accident totaled approximately $14,000.  Allstate further asserted that Dr. Martinez could not state that any treatment provided by him was causally related to the accident.  It further asserted that it would present expert testimony with respect to the value of Ms. Newman's vehicle.

In its motion, Allstate moved to exclude Dr. Martinez's deposition from the evidence where Dr. Martinez "repeatedly testified that he could not state to a reasonable degree of medical certainty that the alleged accident caused any problem for which he treated" Ms. Newman.  Allstate also moved to prohibit Ms. Newman and all witnesses from referring to the existence of insurance coverage. It further moved the court to exclude all evidence of the hit-and-run nature of the accident as having no bearing on the severity of the accident.  Allstate also moved to prevent Ms. Newman from testifying as to alleged permanent injuries at trial, and for the redaction of evidence of insurance payments.  On July 20, 2011, Ms. Newman responded and opposed Allstate's motions in limine.

The matter was heard on July 25-26, 2011.  At the commencement of the proceedings, the trial court granted Allstate's motion in limine to exclude the deposition of Dr. Martinez upon determining that Dr. Martinez had testified that there was no causal link between Ms. Newman's complaint and the accident.  The trial court granted Allstate's motion to exclude references to Allstate, but denied its motion to exclude references to "John Doe."  The trial court granted Allstate's motion to exclude the mention of the hit-and-run nature of the

accident, but permitted testimony as to the remainder of "what occurred in the accident." With respect to Allstate's motion to exclude any testimony regarding permanent injury, the trial court permitted Ms. Newman to testify "as to whatever she thinks her injuries are," and stated "she can testify as to her conditions." The trial court granted Allstate's motion to redact insurance information. The trial court denied Allstate's motion that the court take judicial notice of the term "malingering" contained in Dr. Gardocki's testimony.

Allstate moved for a directed verdict at the close of proof. The trial court granted the motion with respect to Ms. Newman's claim for punitive damages, but denied the motion with respect the remainder of her claims. The jury returned a general verdict in favor of Ms. Newman in the amount of $5,096.96. The trial court entered judgment on the jury verdict on August 3, 2011. On August 10, 2011, Ms. Newman filed a motion for a new trial, which the trial court denied on September 9, 2011. Ms. Newman filed a timely notice of appeal to this Court.

## Issues Presented

Ms. Newman presents the following issues for our review:

(1)     Whether the trial court erred in excluding the entire testimony and exhibits of Dr. Santos Martinez's deposition.

(2)     Whether the trial court erred in allowing a letter written by Marcia Mason to be read to the jury.

(3)     Whether the trial court erred in failing to give instructions concerning the award of property damages for the Plaintiff's totaled vehicle and the assumption of liability for negligence by Allstate.

(4)     Whether there was misconduct on the part of the jury for failure to follow the jury charge instructions that were given.

(5)     Whether the jury verdict was inadequate.

(6)     Whether the trial court erred in denying the Plaintiff's motion for a new trial.

## Standard of Review

On appeal from a jury trial, we will not set aside the jury's findings of fact unless

there is no material evidence to support the verdict. *Childress v. Union Realty Co.*, 97 S.W.3d 573, 576 (Tenn. Ct. App. 2002); Tenn. R. App. P. 13(d). Upon review, this Court will not re-weigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party, and discard evidence to the contrary. *Id.* We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id.* Our review of the trial court's conclusions of law in a jury trial, however, is *de novo* upon the record, with no presumption of correctness. Tenn. R. App. P. 13(d); *Campbell v. Florida Steel Corp.*, 919 S.W .2d 26, 28 (Tenn. 1996).

**Discussion**

We first turn to Ms. Newman's assignments of error with respect to the trial court's evidentiary decisions. We review a trial court's decisions to admit or exclude evidence under an abuse of discretion standard. *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005) (citation omitted). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). This standard does not permit an appellate court to substitute its judgment for that of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Upon review of the record, we find no abuse of discretion on the part of the trial court in excluding the deposition of Dr. Martinez from the evidence in this case. As Allstate asserts, Dr. Martinez simply did not testify that the injuries for which he treated Ms. Newman were causally related to any injuries she received in the August 2005 accident. Rather, when asked whether he had found anything that would lead him to believe that the accident caused the complaints which Ms. Newman reported to him, Dr. Martinez stated that there was nothing that would explain the generalized symptoms reported to him by Ms. Newman so long after the accident.

We next turn to Ms. Newman's assertion that the trial court erred by permitting an August 2006 letter from Marcia Mason (Ms. Mason), an MLGW Human Resources Services Manager, terminating Ms. Newman's employment to be entered into the evidence. The letter indicates that Ms. Newman had failed to provide medical documentation to support her absence from work, and that the medical documentation provided indicated that Ms.

Newman was released to work in late September 2005. The letter advised Ms. Newman that her employment was terminated effective August 1, 2006. At the trial of this matter, Ms. Newman objected to admission of the letter, which was read into evidence, on the basis of relevance and hearsay. It is undisputed in this case that MLGW terminated Ms. Newman's employment in August 2006. It is also undisputed that Ms. Newman was absent from work for complaints which she alleges resulted from injuries sustained in the accident, and that Dr. Gardocki released her to return to work in September 2005. The facts recited in the letter do not dispute the assertions made by Ms. Newman, or the evidence entered into the record by her. Further, Ms. Newman did not dispute the authenticity of the termination letter, and admitted to receiving it. We find no abuse of discretion on the part of the trial court.

We turn next to whether the trial court failed to properly instruct the jury on the issue of property damage and to whether the jury failed to follow the trial court's instructions. Allstate asserts that Ms. Newman did not raise these issues in the trial court, and cannot raise them for the first time on appeal. A "cardinal principle of appellate practice" is that an issue not raised in the trial court cannot be raised for the first time on appeal. *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009)(citations omitted). Upon review of the record, we note that Ms. Newman did not object to the trial court's jury instructions at the trial of this matter, and did not raise the issue in her motion for a new trial. Accordingly, Ms. Newman may not raise this issue here.

Ms. Newman raised the issue of whether the jury failed to follow the trial court's instructions in her motion for a new trial, however, asserting that the jury failed to specifically itemize damages awarded for property damages and those awarded for personal injuries. The jury instructions referenced by Ms. Newman stated:

> If you decide a party is entitled to damages, you must fix an amount that will reasonably compensate that party for each of the following elements of claimed loss or harm, if you find it was or will be suffered by that party and was caused by the event upon which you base your finding of fault. Each of these elements of damages is separate. You may not duplicate damages for any element by also including that same loss or harm in another element of damage.

We do not read the trial court's instructions as requiring the jury to return an award, if any, assigning a specific dollar amount to each element of the award. Further, the trial court provided the jury with a general verdict form. The jury followed the trial court's instructions in this case.

We turn next to Ms. Newman's assertion that the jury verdict in this case was

-6-

inadequate. Ms. Newman's argument here and in her motion for a new trial, as we perceive it, is that there was no material evidence in the record to support the jury's award of total damages in the amount of $5,096.96. She asserts that the undisputed testimony of Dr. Gardocki was that Ms. Newman incurred medical bills in the amount of $14,031.09 as a result of necessary and reasonable treatment for injuries received in the 2005 accident. She also asserts that the jury's award does not reflect an adequate award of damages for the loss of her vehicle.

Allstate does not dispute that Dr. Gardocki's testimony was unrefuted, and acknowledges that Dr. Gardocki's evidentiary deposition was the only medical testimony at trial. Allstate asserts, however, that although Dr. Gardocki testified as to the reasonableness and necessity of the $14,031.09 expenses for the totality of the treatment and therapy rendered from September 2005 to July 2006, he also testified that Ms. Newman was "malingering" when she incurred at least some of these expenses. Allstate asserts that Ms. Newman failed to carry her burden to prove damages in excess of the amount awarded by the jury.

As noted above, the jury verdict in this case was a general verdict. Thus, we are unable to determine what portion of the damage award related to an award of property damages and what portion reflects an award for personal injuries. Allstate presented evidence at trial of property damage in the amount of $1,725 and asserts that the jury verdict reflects this amount plus an award for medical expenses and pain and suffering in the amount of $3,371.98. Ms. Newman testified at trial that the vehicle "was worth approximately $2,500," and asserts the jury award was inadequate to compensate her for the loss of her vehicle plus her medical expenses.

We begin our discussion of this issue by emphasizing that our review on appeal is whether there is any material evidence in the record to support the jury's verdict. The evidence in the record with respect to property damage is that Ms. Newman sustained property damage between $1,725 and $2,500. With respect to medical expenses and pain and suffering, we note that the record does not appear to contain bills or evidence relating to any medical tests or examination of Ms. Newman that may have been performed immediately after the accident on August 28, 2005. Thus, the only proof with respect to medical expenses contained in the record are those relating to services provided by Campbell Clinic. Dr. Gardocki testified that he first saw Ms. Newman on September 8, 2005, and that his examination revealed what was most likely a whiplash type of injury and post-traumatic headache that were most likely caused by the August 28 collision. He testified that he ordered an MRI that revealed a small disc bulge in Ms. Newman's back, and that he did not determine what caused the bulge. Dr. Gardocki testified that he next saw Ms. Newman on September 20, and that he ordered a physical therapy regime including therapy twice a week

for six weeks, a neck program, a home exercise program, and body mechanics and postural awareness. He testified that Ms. Newman followed the regime, and that he was called in to examine her on November 17 when she was complaining of severe neck pain. Dr. Gardocki stated that Ms. Newman was in significant pain and that her blood pressure was high. He further stated that there can be a correlation between pain and blood pressure. Dr. Gardocki testified that he sent Ms. Newman to the emergency room to have her blood pressure addressed. Dr. Gardocki next saw Ms. Newman in December. He testified that her pain level was then "much decreased," and that her physical therapy was resumed. Dr. Gardocki testified that he sent Ms. Newman for another MRI because she was experiencing radiating arm pain, and that the MRI was basically unchanged.

Dr. Gardocki continued to treat and test Ms. Newman for complaints of pain in her back, neck and arm through June of 2006. He testified that he felt her initial neck and upper back pain could be related to the accident. Dr. Gardocki also stated that Ms. Newman would have no limitations as a result of her injuries. He further testified that the only significant finding throughout his treatment and tests was limited range of motion in Ms. Newman's neck, and that he could not determine whether the bulge in Ms. Newman's back was caused by the accident or was simply part of the aging process.

Dr. Gardocki testified that the bills for treatment and tests received by Ms. Newman at the Campbell Clinic totaled $14,031.09. He further testified that the charges were reasonable and necessary. Dr. Gardocki testified that he determined that Ms. Newman should be excused from work only on the days that she went to treatment, and that he did not believe it was necessary for her to otherwise be absent from work as a result of the accident. He testified that Ms. Newman received a medical excuse to be absent from work for seven days from September 2005 through June 2006. Dr. Gardocki testified that Ms. Newman had disassociated pain, or pain for all different areas at some point, and that the applicable clinical term was "malingering." He defined malingering as "[b]asically, amplifying symptoms or presenting symptoms that have no objective anatomic pathology." Dr. Gardocki stated, "But when you take the whole picture in totality, my impression is, is that Ms. Newman was more interested in having a note to get off work than she was in trying to get better."

Ms. Newman testified that Dr. Gardocki "did two or three MRIs and he did some x-rays." She further testified that the remainder of the tests performed at Campbell Clinic were performed by Dr. Martinez when Ms. Newman was no longer under Dr. Gardocki's care.

As noted above, Dr. Martinez's testimony was excluded from the evidence because he unambiguously stated that he could not say that Ms. Newman's complaints were caused by injuries sustained in the accident. Dr. Gardocki's testimony, therefore, is the only medical

testimony contained in the record. It is undisputed that Dr. Gardocki ordered medical treatment and tests for Ms. Newman in order to treat and diagnose pain in her back, neck and arm; that he testified that the tests and treatment were necessary and reasonable; and that Dr. Gardocki testified that Ms. Newman's initial neck pain, headaches, and high blood pressure likely resulted from injuries sustained in the August 2005 crash. It is also undisputed that Dr. Gardocki testified that Ms. Newman was "malingering," raising a question of whether Ms. Newman's complaints of extended and prolonged pain as a result of the accident were credible. The sum of Dr. Gardocki's testimony raises a question of the degree to which the treatment Ms. Newman received at Campbell Clinic was related to injuries sustained in the August 2005 collision.

Causation generally is a question of fact for the finder of fact. *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005). Similarly, the matter of credibility is within the province of the finder of fact. *West v. Schofield*, 380 S.W.3d 105, 108 (Tenn. Ct. App. 2012). Upon review of the record, including the medical bills, we cannot say that there is no material evidence to support the jury's verdict in this case. The totality of the evidence contained in the record supports a conclusion that only the costs associated with the initial testing and treatment of Ms. Newman for a whiplash like injury to her neck were reasonably related to the August 2005 accident. It further supports a finding that Ms. Newman suffered property damage in an amount not exceeding $1,725, the amount to which Allstate's expert testified. Finally, Ms. Newman testified that she received compensation at her normal rate of pay from MLGW through its sick leave program for the time she was excused from work. Thus, upon review of the totality of the evidence, we find material evidence to support the jury's verdict in this case.

We finally turn to whether the trial court erred by denying Ms. Newman's motion for a new trial. We review a trial court's decision to deny a motion for a new trial under an abuse of discretion standard. *McCrory v. Tribble*, No. W2009-00792-COA-R3-CV, 2010 WL 1610587, at *7 (Tenn. Ct. App. April 22, 2010). In light of the foregoing, we find no abuse of discretion on the part of the trial court in denying Ms. Newman's motion for a new trial.

## Holding

The judgment of the trial court is affirmed. Costs of this appeal are taxed to Ms.

Newman.  This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

_____
DAVID R. FARMER, JUDGE