PER CURIAM
*687 Thirty-two years ago a jury convicted Billy Ray Irick of the rape and murder of a seven-year-old child and sentenced him to death. Thirty years ago, this Court affirmed Mr. Irick's murder conviction and sentence of death. State v. Irick , 762 S.W.2d 121 (Tenn. 1988), cert. denied , 489 U.S. 1072, 109 S.Ct. 1357, 103 L.Ed.2d 825 (1989). Over the course of this decades-long journey, all of Mr. Irick's subsequent efforts to obtain relief from his conviction and sentence of death in state and federal courts were unsuccessful. See, e.g., Irick v. State , 973 S.W.2d 643 (Tenn. Crim. App. 1998), perm. app. denied (Tenn. June 15, 1998), cert. denied 525 U.S. 895, 119 S.Ct. 219, 142 L.Ed.2d 180 (1998) (state post-conviction case); Irick v. Bell , 565 F.3d 315 (6th Cir. 2009), cert. denied 559 U.S. 942, 130 S.Ct. 1504, 176 L.Ed.2d 118 (2010), reh'g denied 559 U.S. 1088, 130 S.Ct. 2142, 176 L.Ed.2d 759 (2010) (federal habeas corpus case); Irick v. State , No. E2010-02385-CCA-R3-PD, 2011 WL 1991671 (Tenn. Crim. App. May 23, 2011), perm. app. denied (Tenn. Aug. 25, 2011) (state writ of error coram nobis case); Irick v. State , No. E2012-01326-CCA-R3-PD, 2013 WL 1097816 (Tenn. Crim. App. Mar. 18, 2013), perm. app. denied (Tenn. Aug. 27, 2013) (second state writ of error coram nobis case). After Mr. Irick completed the standard three-tier review process-twenty-four years after his conviction and sentence-the State moved this Court to set an execution date pursuant to Tennessee Supreme Court Rule 12(4)(A). This Court granted the State's motion and scheduled the execution for December 7, 2010, now more than seven years ago.
Thereafter, Mr. Irick asserted that he was incompetent to be executed, and his execution was again put on hold to allow for a judicial determination of that claim, which ultimately was resolved against Mr. Irick. See State v. Irick , 320 S.W.3d 284 (Tenn. 2010), cert. denied 562 U.S. 1145, 131 S.Ct. 916, 178 L.Ed.2d 765 (2011). On motion of the State, this Court rescheduled his execution for January 15, 2014. On December 11, 2013, this Court reset the execution of Mr. Irick to October 7, 2014.
At the time of Mr. Irick's conviction and sentencing, electrocution was the only method of execution in this State, but by the time his execution dates were set, lethal injection had become the default method of execution in Tennessee.[1] Initially, Tennessee utilized a three-drug lethal injection protocol consisting of Sodium Pentothal (a barbiturate to render the inmate unconscious), Pancuronium Bromide (a paralytic to paralyze the muscles), and Potassium Chloride (to stop the heart). Abdur'Rahman v. Bredesen , 181 S.W.3d 292, 300 (Tenn. 2005). Several death row inmates challenged the constitutionality of *688 this protocol in 2002, and this Court rejected the constitutional challenge. Id. Thereafter, on September 27, 2013, the Tennessee Department of Correction ("TDOC") adopted a new single-drug lethal injection protocol providing for injection of a lethal dose of Pentobarbital. West v. Schofield , 519 S.W.3d 550, 552 (Tenn. 2017).
Prior to the October 7, 2014 execution date, Mr. Irick and other death row inmates filed a declaratory judgment action attacking the constitutionality of the newly adopted single-drug lethal injection protocol. This Court again stayed Mr. Irick's execution until the completion of that litigation, and on March 28, 2017, this Court rejected the constitutional challenge to the single-drug lethal injection protocol. West v. Schofield , 519 S.W.3d 550 (Tenn. 2017), cert. denied sub nom. West v. Parker , --- U.S. ----, 138 S.Ct. 476, 199 L.Ed.2d 364 (2017) and Abdur'Rahman v. Parker , --- U.S. ----, 138 S.Ct. 647, 199 L.Ed.2d 545 (2018).
On January 8, 2018, TDOC adopted a three-drug protocol, which provides for the use of Midazolam, Vecuronium Bromide, and Potassium Chloride, as an alternative to the single-drug protocol this Court upheld in West v. Schofield. Ten days later, on January 18, 2018, and pursuant to Tennessee Supreme Court Rule 12(4)(E), this Court sua sponte reset the execution date for Mr. Irick to August 9, 2018.
On February 20, 2018, Mr. Irick and thirty-two other death row inmates filed in the Chancery Court for Davidson County a declaratory judgment action challenging the constitutionality of the newly adopted alternative three-drug lethal injection protocol. See Abdur'Rahman v. Parker , No. 18-183-III (Nashville Chancery Division III). While that declaratory judgment action was pending, on July 5, 2018, TDOC again revised the lethal injection protocol to eliminate the single-drug protocol so that the three-drug protocol became the exclusive method of execution by lethal injection in Tennessee. On July 19, 2018, the Chancery Court clarified that the only claim that would be adjudicated in the declaratory judgment action was the constitutional challenge to the three-drug protocol adopted on July 5, 2018.[2] Id.
After a ten-day trial, on July 26, 2018, the Davidson County Chancery Court dismissed the complaint for declaratory judgment, finding that the plaintiffs had failed to establish that Tennessee's three-drug lethal injection protocol was unconstitutional or unlawful. Id. On July 30, 2018, the plaintiffs filed a notice of appeal. See Abdur'Rahman v. Parker , No. M2018-01385-COA-R3-CV. On that same day, Mr. Irick filed a Motion to Vacate Execution Date. On August 2, 2018, the State filed its Response to the Motion to Vacate Execution Date. On August 3, 2018, Mr. Irick filed a Reply to the State's Response.
*689 Having set forth much of the procedural history of these cases involving Mr. Irick, we now turn to the specific matter currently before the Court. Significantly, effective July 1, 2015, this Court amended its rule pertaining to what a prisoner must show to be entitled to a stay of execution under these circumstances. See Tenn. Sup. Ct. R. 12(4)(E). After the 2015 amendment to Tennessee Supreme Court Rule 12(4)(E), this Court will not stay an execution pending resolution of collateral litigation in state court "unless the prisoner can prove a likelihood of success on the merits of that [collateral] litigation." Tenn. Sup. Ct. R. 12(4)(E). The inmates' currently pending challenge to the lethal injection protocol clearly constitutes collateral litigation. Thus, before this Court can stay Mr. Irick's execution date, Mr. Irick must prove that he has a likelihood of succeeding on the merits of that litigation. "In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." Six Clinics Holding Corp. II v. Cafcomp Sys. , 119 F.3d 393, 402 (6th Cir. 1997). Therefore, we first must consider the elements that Mr. Irick must prove to prevail in the pending action to determine whether he has satisfied this standard and established more than a mere possibility of success on the merits.
The constitutional analyses set forth by the United States Supreme Court in Glossip v. Gross , --- U.S. ----, 135 S.Ct. 2726, 192 L.Ed.2d 761 (2015), and Baze v. Rees , 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), and by this Court in West v. Schofield , 519 S.W.3d at 550, hold that to prevail on a claim that a particular method of execution amounts to cruel and unusual punishment, an inmate must establish both that the method in question presents an imminent risk of serious illness and needless suffering and that a feasible, readily implemented alternative method of execution exists that will significantly reduce a substantial risk of severe pain. The trial court held that the inmates failed to establish either of these prongs. We now turn to our analysis as to whether Mr. Irick has demonstrated a likelihood of success on both of these elements in his motion.
We turn first to the requirement that Mr. Irick demonstrate a likelihood of success in establishing a feasible, readily implemented alternative method of execution. Although the inmates asserted that a single-drug method using only Pentobarbital was a quicker and more humane way to execute, they did not offer any direct proof that this method is available to TDOC. Instead, the inmates chose to simply attempt to discredit the State's witnesses on this issue. Testimony from the State's witnesses established that they were unable to obtain Pentobarbital through ordinary transactional efforts, despite many efforts to do so. The trial court accredited this testimony as to the efforts made by TDOC to acquire Pentobarbital and concluded that Pentobarbital was not available. As such, the trial court found that the inmates had failed to establish this element. We are unwilling to presume, as does the dissent, that Pentobarbital is available to TDOC because it has been used in executions in Texas and Georgia. Our review of the record before us at this time leads us to the same conclusion as that of the trial court. Mr. Irick has not demonstrated a likelihood of success on the merits of this element.
In so ruling, we reject as well Mr. Irick's argument that he has established a likelihood of success on his assertion that the trial court erred in denying his post-trial motion to amend his complaint to allege the two-drug protocol consisting of Midazolam and Potassium Chloride as an alternative method of execution. "Trial courts have broad authority to decide *690 motions to amend pleadings and will not be reversed absent an abuse of discretion." Pratcher v. Methodist Healthcare Memphis Hosps. , 407 S.W.3d 727, 741 (Tenn. 2013) (citing Hawkins v. Hart , 86 S.W.3d 522, 532 (Tenn. Ct. App. 2001) ). An appellate court cannot "substitute its judgment for that of the trial court" when applying the abuse of discretion standard. Id. (citing Williams v. Baptist Mem'l Hosp. , 193 S.W.3d 545, 551 (Tenn. 2006) ). Many considerations "guide a trial court's discretionary decision whether to allow a late-filed amendment," including "undue delay, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments[,] and futility of the amendments." Id. (citing Merriman v. Smith , 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979) ). In this case, Mr. Irick filed his complaint challenging the alternative three-drug protocol in February 2018 but did not allege the two-drug protocol as a known and available constitutionally acceptable alternative method of execution in that initial complaint. He failed to include this allegation in the amended complaint that was filed only days before the trial. In denying his motion to amend, the trial court found that the issue also was not tried by express or implied agreement. Given these circumstances, we need not review the trial testimony, as the dissent asserts, to determine that Mr. Irick has failed to prove a likelihood of success on his allegation that the trial court abused its discretion in denying his post-trial motion to amend.[3]
Given that Mr. Irick must prove a likelihood of success on the merits of both elements, our inquiry could stop there. However, given the magnitude of what is at stake in these proceedings, we also note some additional points that dictate that this Court must deny Mr. Irick's motion. First, the Glossip Court upheld Oklahoma's three-drug protocol that used the same procedure with the same combination of drugs as that found in the current Tennessee protocol. See Glossip , 135 S.Ct. at 2731. Additionally, as already noted, this Court previously upheld a similar three-drug protocol in Abdur'Rahman v. Bredesen , 181 S.W.3d 292 (Tenn. 2005). Second, to the extent that Mr. Irick seeks to attack the current Tennessee protocol based upon the potential use of compounded drugs in the Tennessee protocol, this Court expressly approved the use of a compounding process when it upheld the protocol at issue in West v. Schofield , 519 S.W.3d at 552. Finally, Mr. Irick attempts to rely on precedent from prior actions in which this Court has granted a stay of execution while collateral litigation was pending. Indeed, this Court has granted such stays in the past. See, e.g. , Order, Abdur'Rahman v. State , No. M1988-00026-SC-DPE-PD (Tenn. Apr. 10, 2015). However, Mr. Irick fails to recognize that the amendment to Rule 12(4)(E) requiring the inmate to establish a likelihood of success on appeal as a prerequisite to this Court granting a stay was adopted after this Court's Order granting the stay in Abdur'Rahman v. State . As a result, the present case is the first case presented to this Court governed by the amended version of Rule 12(4)(E). Consequently, to obtain a stay at this time, Mr. Irick must establish a likelihood of success, and he has failed to satisfy this standard.[4]
*691 For all of the reasons set forth above, the Court concludes that Mr. Irick has failed to establish a likelihood of success on the merits of the collateral litigation. Accordingly, his Motion to Vacate Execution Date is DENIED.

Tennessee adopted lethal injection as a method of execution on May 18, 1998, and by the same legislation allowed persons sentenced before January 1, 1999, to elect to be sentenced to death by lethal injection rather than electrocution. Tenn. Code Ann. § 40-23-114 (Supp. 1998). On March 30, 2000, lethal injection became the default method of execution in this state. Tenn. Code Ann. § 40-23-114 (Supp. 2000); see also West v. Schofield , 468 S.W.3d 482, 485 (Tenn. 2015) (citing West v. Ray , 401 Fed. Appx. 72, 75 (6th Cir. 2010) ).

It bears noting at this point that TDOC's revisions of its lethal injection protocol since 2010 have been necessitated by the success anti-death-penalty advocates have had in convincing drug companies not to provide certain drugs for use in executions. As the United States Supreme Court noted, after legal challenges to the common three-drug protocol that Tennessee initially used were rejected, "a practical obstacle soon emerged, as anti-death-penalty advocates pressured pharmaceutical companies to refuse to supply the drugs used to carry out death sentences." Glossip v. Gross , --- U.S. ----, 135 S.Ct. 2726, 2733, 192 L.Ed.2d 761 (2015). States, including Tennessee, then adopted the single-drug protocol that utilized Pentobarbital. Id. But soon thereafter, "[a]nti-death-penalty advocates lobbied the Danish manufacturer of the drug to stop selling it for use in executions." 135 S.Ct. at 2733-34. TDOC's revisions of its lethal injection protocol, as well as the litigation and delay resulting therefrom, are attributable to the success of anti-death-penalty advocates in convincing pharmaceutical companies not to provide drugs for executions. Id.

We note as well that alleging the two-drug protocol as a constitutionally acceptable alternative to the three-drug protocol would have been difficult to square with Mr. Irick's assertions regarding the effects of Midazolam.

We reject the dissent's assertion that this decision represents a "rush to execute." Indeed, by applying the law and requiring satisfaction of this legal standard, we are not "rush[ing] to execute" Mr. Irick. In fact, this suggestion is astonishing, actually, given that Mr. Irick was convicted and sentenced thirty-two years ago and has obtained multiple stays over the years.