# SUPREME COURT OF THE UNITED STATES

### EDMUND ZAGORSKI *v.* TONY PARKER, COMMISSIONER, TENNESSEE DEPARTMENT OF CORRECTIONS, ET AL.

#### ON APPLICATION FOR STAY AND PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF TENNESSEE, MIDDLE DIVISION

#### No. 18–6238 (18A376) Decided October 11, 2018

The application for stay of execution of sentence of death presented to JUSTICE KAGAN and by her referred to the Court is denied. The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER joins, dissenting from denial of application for stay and denial of certiorari.

Once again, a State hastens to kill a prisoner despite mounting evidence that the sedative to be used, midazolam, will not prevent the prisoner from feeling as if he is "drowning, suffocating, and being burned alive from the inside out" during a process that could last as long as 18 minutes. *Irick* v. *Tennessee*, 585 U. S. ___, ___ (2018) (SOTOMAYOR, J., dissenting from denial of application for stay) (slip op., at 1); see also *Arthur* v. *Dunn*, 580 U. S. ___, ___ (2017) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 2). And once again the State claims the right to do so under the Eighth Amendment not because a court has concluded that these risks are overblown, but rather because of the "perverse requirement that inmates offer alternative methods for their own executions." *McGehee* v. *Hutchinson*, 581 U. S. ___, ___ (2017) (SOTOMAYOR, J., dissenting from denial of application for stay and denial of certiorari) (slip op., at 2); see also *Glossip* v. *Gross*, 576 U. S. ___, ___–___ (2015) (slip op., at 13–

15). This requirement was legally and morally wrong when it was promulgated, and it has been proved even crueler in light of the obstacles that have prevented capital prisoners from satisfying this precondition. I would therefore grant a stay of execution and grant petitioner Edmund Zagorski's petition for certiorari to consider what suffices for a prisoner to prove "a known and available alternative method of execution." See *Glossip*, 576 U. S., at ___ (slip op., at 13).[1]

For several years, Tennessee has provided for the execution of capital prisoners via a single drug called pentobarbital. See *Abdur'Rahman* v. *Parker*, No. M2018–01385–SC–RDO–CV (Sup. Ct. Tenn., Oct. 8, 2018), pp. 3–4. Pentobarbital, a barbiturate, does not carry the risks described above; unlike midazolam (a benzodiazepine), pentobarbital is widely conceded to be able to render a person fully insensate. See, *e.g., Glossip,* 576 U. S., at ___ (slip op., at 5).

In January 2018, Tennessee Department of Corrections (TDOC) adopted an alternative to pentobarbital: Protocol B, a three-drug sequence beginning with midazolam (the drug whose sedative properties are dubious), to be followed by vecuronium bromide (to paralyze the prisoner) and then potassium chloride (to stop the prisoner's heart).[2]

—————

[1] The State's refusal to allow Zagorski's attorneys to access a telephone during Zagorski's scheduled execution is also troubling. For reasons expressed before, I would grant review of this question as well. See *Arthur* v. *Dunn*, 581 U. S. ___, ___–___ (2017) (SOTOMAYOR, J., dissenting from denial of application for stay and denial of certiorari) (slip op., at 1–2).

[2] "The first drug [midazolam] is critical; without it, the prisoner faces the unadulterated agony of the second and third drugs." *Arthur* v. *Dunn*, 580 U. S. ___, ___ (2017) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 2). This Court in *Glossip* concluded that a district court did not clearly err in finding that midazolam could render a prisoner sufficiently insensate to the excruciating effects of the second and third drugs. See 576 U. S., at ___ (slip op., at 19). Any confidence

No. M2018–01385–SC–RDO–CV, at 4. The pentobarbital option—Protocol A—remained, meanwhile, in effect. *Ibid.* In February 2018, the State set execution dates for several prisoners, including Zagorski, and Zagorski and others soon thereafter filed suit challenging Protocol B and pointing to Protocol A, pentobarbital, as the available, significantly less risky alternative. See *id.,* at 4–5. The State, however, was noncommittal about pentobarbital's availability. At a pretrial hearing in April 2018, as Justice Lee explained in dissent below, the trial court "zeroed in on the problem and repeatedly questioned counsel about the availability of pentobarbital," emphasizing that an answer to this question was "'essential.'" *Id.,* at 4. "The State's response to the trial court's direct question—'will [Protocol A] be available for the August 9th execution?'—was 'I can't answer that question, Your Honor.'" *Id.,* at 5.

Then, "[j]ust a few hours before the parties filed their trial briefs on July 5, 2018, [TDOC] adopted a revised execution protocol that abandoned [pentobarbital], leaving only Protocol B"—the midazolam option. *Id.,* at 4. Trial commenced a few days later. Working on a highly expedited timeline, the trial court ruled against the prisoners later that month, concluding that they had failed to prove the availability of pentobarbital—the very method that TDOC had retained as Protocol A until just before trial started.[3] See *Abdur'Rahman* v. *Parker*, No. 18–183–II(III)

————————

in that conclusion has since eroded in the face of growing contrary medical evidence and worrisome results from executions themselves. See, *e.g., Abdur'Rahman* v. *Parker*, No. 18–183–II(III) (Ch. Ct. Davidson Cty., Tenn., July 26, 2018), pp. 21–22, 27–28. Because the opinions below do not defend the use of midazolam on the merits, midazolam's inadequacy is not the focus here.

[3] The trial court also concluded that the prisoners' experts "established that midazolam does not elicit strong analgesic effects and the inmate being executed may be able to feel pain from the administration of the second and third drugs." *Abdur'Rahman* v. *Parker*, No. 18–183–II(III), at 21. But it nevertheless concluded, without expressing any

(Ch. Ct. Davidson Cty., Tenn., July 26, 2018), pp. 2, 34. The Tennessee Supreme Court affirmed on that ground, while declining to "address the Plaintiffs' claim that the three-drug protocol creates a demonstrated risk of severe pain." No. M2018–01385–SC–RDO–CV, at 22.

The circumstances surrounding Zagorski and his fellow prisoners' attempts to prove that pentobarbital was "available" demonstrate how unfairly this already perverse requirement is being applied. For one, the prisoners' ability to prove the drug's availability was severely constrained by rules of secrecy surrounding individuals involved in the execution process. See *id.,* at 3 (Lee, J., dissenting); see also Tenn. Code Ann. §10–7–504(h) (2018). The prisoners were unable to depose individuals with direct knowledge of the State's efforts to obtain pentobarbital. Nor were the prisoners allowed to learn which potential sellers the State ostensibly approached to try to obtain pentobarbital. Short of cold-calling every pharmacy in the country and asking for pentobarbital, it is anyone's guess how the prisoners were supposed to challenge meaningfully the State's claim that it could not obtain the drug. Yet they were faulted below for failing to offer "direct proof." No. M2018–01385–SC–RDO–CV, at 21.

Moreover, it is not as if pentobarbital has vanished from the Earth, for purposes of execution or otherwise. As Justice Lee noted in dissent, Texas and Georgia have each used it multiple times in executions this year alone. See No. M2018–01385–SC–RDO–CV, at 5. Missouri also appears to be prepared to use it in upcoming executions. See, *e.g.,* Brief for Respondent in *Bucklew* v. *Precythe*, O. T. 2018, No. 17–8151, p. 1. Moreover, what discovery the

————————

countervailing confidence in midazolam's anesthetic properties, that this Court "would not find the facts established in this case to violate the Constitution." *Id.,* at 22; see also *Irick* v. *Tennessee*, 585 U. S. ___, ___–___ (2018) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 2–3).

prisoners did obtain below indicates that roughly 10 of the 100 suppliers that TDOC reached out to in 2017 did have pentobarbital for sale—just not the number of doses that the State had requested. No. 18–183–II(III), at 13. And at least one supplier around this time evidently quoted a price and discussed a "bulk $ option." App. to Pet. for Cert. 197a.

The trial court found credible the senior TDOC officials who testified to having delegated a search for pentobarbital to their subordinates, see No. 18–183–II(III), at 11–12, and the Tennessee Supreme Court based its affirmance in significant part on these "credibility determinations," see No. M2018–01385–SC–RDO–CV, at 21–22. But these senior officials were not the individuals who actually undertook the search for pentobarbital, see *id.,* at 12; the actual procurers, by contrast, were unavailable to the prisoners because of the State's secrecy laws. When the prisoners tasked with asking the State to kill them another way are denied by the State information crucial to establishing the availability of that other means of killing, a grotesque requirement has become Kafkaesque as well.

Such barriers are not the only ways in which prisoners proposing a more humane means of execution may be thwarted. In other instances, courts have rejected claims by petitioners proposing means of execution that are unavailable under state law. See, *e.g., Arthur*, 580 U. S., at ___ (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 1). Such rejections are likewise troubling, because they suggest that "all a State has to do to execute [a person] through an unconstitutional method is to pass a statute declining to authorize any alternative method," *id.,* at ___ (slip op., at 9), and they likewise show the need for us to address in more detail what *Glossip* actually requires. In any event, the prisoners here sought only the State's own Protocol A, which the State itself had held out as a seemingly available method before eliminating it "on

the eve of trial." No. M2018–01385–SC–RDO–CV, at 5 (Lee, J., dissenting). That is hardly an extravagant request, particularly when the State's own evidence discloses that there had been opportunities to purchase pentobarbital both in smaller quantities and in bulk.

I accordingly would grant Zagorski's request for a stay and grant certiorari to address what renders a method of execution "available" under *Glossip*. Capital prisoners are not entitled to pleasant deaths under the Eighth Amendment, but they are entitled to humane deaths. The longer we stand silent amid growing evidence of inhumanity in execution methods like Tennessee's, the longer we extend our own complicity in state-sponsored brutality. I dissent.