NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0410n.06

No. 19-5585

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

STEPHEN MICHAEL WEST,                        )
                                             )
    Plaintiff-Appellant,                     )
                                             )
v.                                           )
                                             )   ON APPEAL FROM THE
TONY PARKER, Commissioner of Tennessee       )   UNITED STATES DISTRICT
Department of Correction, and TONY MAYS,     )   COURT FOR THE MIDDLE
Warden of Riverbend Maximum Security         )   DISTRICT OF TENNESSEE
Institution,                                 )
                                             )
    Defendants-Appellees.                    )

FILED
Aug 06, 2019
DEBORAH S. HUNT, Clerk

BEFORE:     BOGGS, MOORE, and COOK, Circuit Judges.

BOGGS, Circuit Judge.

Stephen West, an inmate on death row in the Riverbend Maximum Security Institution in Tennessee, appeals from a district-court order dismissing his 42 U.S.C. § 1983 civil-rights action challenging Tennessee's lethal-injection protocol. We affirm the district court's order.

## FACTUAL AND PROCEDURAL HISTORY

A Tennessee jury convicted West of first-degree premeditated murder, aggravated kidnapping, and aggravated rape in the deaths of Wanda Romines and her daughter, Sheila Romines. He was sentenced to death for each murder. *See State v. West*, 767 S.W.2d 389, 390 (Tenn. 1989). The Tennessee Supreme Court affirmed his convictions and death sentence. *Id.* at 403. We previously affirmed the district court's denial of West's federal habeas petition, *West v.*

*Bell*, 550 F.3d 542 (6th Cir. 2008), and denied him permission to file a successive habeas petition, *In re West*, 402 F. App'x 77 (6th Cir. 2010).

At the time West was sentenced to death, Tennessee had selected electrocution as its method of execution. *See* Tenn. Code Ann. § 40-23-114 (1982). In 2000, Tennessee adopted lethal injection as its default method of execution. *See* Tenn. Code Ann. § 40-23-114(a). A person sentenced to death for an offense committed before January 1, 1999, "may elect to be executed by electrocution by signing a written waiver waiving the right to be executed by lethal injection." *Id.* (b). In the event that lethal injection is held unconstitutional, or one or more of the essential ingredients for carrying out a death sentence is unavailable through no fault of the Tennessee Department of Corrections (TDOC), a death sentence shall be carried out by electrocution. *Id.* (e)(1)–(2).

In 2013, West and other capital prisoners filed suit in state court, challenging amendments to Tennessee's lethal-injection protocol, which at that time provided that inmates would be executed through the injection of a lethal dose of pentobarbital. *West v. Schofield*, 519 S.W.3d 550, 552–53 (Tenn. 2017), *cert. denied sub nom. West v. Parker*, 138 S. Ct. 476, *and Abdur'Rahman v. Parker*, 138 S. Ct. 647 (2018). The trial court denied relief, and the Tennessee Supreme Court affirmed. *Id.* at 552.

TDOC revised its lethal-injection protocol in January 2018 to provide for two alternative methods of execution. Protocol A called for a lethal dose of pentobarbital. Protocol B is a three-drug protocol comprised of successive doses of midazolam, vecuronium bromide, and potassium chloride. *See West v. Parker*, No. 3:19-cv-00006, 2019 WL 2341406, at *4 (M.D. Tenn. June 3, 2019). West and other inmates filed a declaratory-judgment action in the Davidson County Chancery Court asserting facial challenges to the constitutionality of the January 2018 protocol.

*Abdur'Rahman v. Parker*, 558 S.W.3d 606, 612 (Tenn. 2018). In their second amended complaint, filed in July 2018, the plaintiffs identified pentobarbital as an alternative method of execution for the three-drug protocol. *Ibid.* Two days after the plaintiffs amended their complaint, TDOC revised its lethal-injection protocol to eliminate the use of pentobarbital, so that the three-drug protocol was the "exclusive method of execution by lethal injection in Tennessee." *Ibid.* After a trial, the chancery court dismissed the complaint, ruling that the plaintiffs failed to prove both that an available alternative method of execution existed, and that the three-drug protocol created a demonstrated risk of severe pain. *Id.* at 613. The chancery court also denied the plaintiffs relief on their other constitutional claims "that included substantive due process, procedural due process, and access to the courts." *Ibid.*

The Tennessee Supreme Court affirmed the trial court's dismissal of the action. *Id.* at 625. The Supreme Court denied certiorari in three petitions arising from that decision. *See Abdur'Rahman v. Parker*, 139 S. Ct. 1533 (2019); *Miller v. Parker*, 139 S. Ct. 626 (2018); *Zagorski v. Parker*, 139 S. Ct. 11 (2018).

West and three other inmates then filed suit in federal district court alleging violations of their constitutional rights in connection with their pending executions. They sought a temporary restraining order or preliminary injunction. *See West*, 2019 WL 2341406, at *6. The district court barred defendants from proceeding with an execution without providing the plaintiff's attorney-witness access to a telephone, but denied any preliminary relief because the plaintiffs had not shown a likelihood of success on the merits of their various claims. *Ibid.* This court affirmed that ruling. *See Miller v. Parker*, 910 F.3d 259, 260 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 399. After Earl Miller was executed, the district court severed the claims of the remaining three plaintiffs.

*West*, 2019 WL 2341406, at *6. West's amended complaint in federal district court asserted seven grounds for relief:

> Count One: Death by lethal injection as required by Tennessee's July 5, 2018 Protocol violates the Ex Post Facto Clause of the United States Constitution, Article II;
>
> Count Two: Tennessee's Electrocution Protocol constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments;
>
> Count Three: Tennessee's July 5, 2018 lethal injection protocol violates the Eighth and Fourteenth Amendments under *Wilkerson v. Utah*, 99 U.S. 130 (1878), *Baze v. Rees*, 553 U.S. 35 (2008); *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726 (2015);
>
> Count Four: Execution by the July 5th Protocol violates Plaintiff's due process rights because it will alter the sentence imposed by the court, in violation of the Fourteenth Amendment.
>
> Count Five: Regardless of the constitutionality of Plaintiff West's sentence, the actual infliction of any punishment which causes Plaintiff West's death violates the Eighth and Fourteenth Amendments because it is "cruel and unusual" under the meaning of the term intended by the drafters of the Eighth Amendment;
>
> Count Six: The July 5th Protocol deprives Plaintiff West of the opportunity to challenge the constitutionality of electrocution because he must elect electrocution to avoid the harsher punishment of lethal injection, in violation of the Fourteenth Amendment;
>
> Count Seven: Tennessee law violates Plaintiff West's rights to access courts and counsel by prohibiting the presence of more than one attorney at an execution and denying that attorney access to a telephone during the execution, contrary to the First, Eighth and Fourteenth Amendments.

Am. Compl. at i–ii, West v. Parker (No. 3:19-cv-00006 Feb. 7, 2019). West sought preliminary and permanent injunctive relief.

The defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of jurisdiction and failure to state a claim upon which relief can be granted. *West*, 2019 WL 2341406,

at *1. The district court granted the defendants' motion. *Ibid.* It ruled that West's claims under Counts One, Three, and Four were precluded from consideration by the doctrine of res judicata. *See id.* at *7–13. It also held that West's arguments concerning Counts Five and Six were foreclosed by Supreme Court precedent. *See id.* at *20–22. The district court concluded that Count Two, concerning the constitutionality of electrocution, was not ripe, *id.* at *15–17, and that Count Seven was moot because the defendants had agreed to provide telephone access to West's attorney-witness during his execution, and West had not identified any "factual or constitutional basis" why West needed two witnesses. *Id.* at *22.

This appeal followed.

## ANALYSIS

### Standard of Review

We review de novo a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012), and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, *Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 418 (6th Cir. 2014). "We construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### The Parties' Arguments

West asserts that the district court improperly determined that the Tennessee Supreme Court's decision in *Abdur'Rahman v. Parker*, 558 S.W.3d 606 (Tenn. 2018), was entitled to preclusive effect and therefore res judicata bars West's claims for relief. West offers three primary

reasons why res judicata is not applicable. First, West argues that he could not obtain the relief he sought from the Tennessee chancery court because it lacked jurisdiction to stay his execution. Second, he contends that res judicata should not apply because the final judgment in *Abdur'Rahman* "was rendered without due process." Brief of Petitioner-Appellant at 14–15, West v. Parker, No. 19-5585 (6th Cir. June 24, 2019). Third, West asserts that the state court lacked jurisdiction to "enter a judgment against him on a complaint to which he was not a party . . . ." *Id.* at 14. Finally, West argues that the district court erred in its analysis of alternate grounds for dismissing Counts Five, Six, and Seven of his federal complaint.[1]

Defendants argue that we should affirm the district court's ruling that the majority of West's claims are barred by res judicata. The Defendants contend that all of West's claims were or could have been raised in chancery court. Defendants agree that the chancery court could not stay West's execution, but assert that West could have sought relief from the Tennessee Supreme Court had he prevailed in the declaratory-judgment action. The Defendants also assert that West failed to raise his jurisdictional argument before the district court, and has therefore forfeited it, but even if West had raised it, he is incorrect. The Defendants maintain that, even if res judicata does not apply, all but one of West's claims may be dismissed on alternative grounds.

---

[1] West does not appear to challenge the district court's dismissal of Count Two of his complaint, which asserted that Tennessee's electrocution protocol constituted cruel and unusual punishment in violation of the Eighth Amendment. The district court dismissed this count without prejudice on ripeness grounds because Tennessee provided for lethal injection as a death sentence, and if West elected to be executed by electrocution, he would waive any claim that electrocution is not constitutional. *West v. Parker*, No. 3:19-cv-00006, 2019 WL 2341406, at *16 (M.D. Tenn. June 3, 2019). Tennessee could only require West be executed by electrocution if lethal injection is held unconstitutional, or the TDOC certified that it was unable to obtain an essential ingredient for lethal injection. *Ibid.* Absent "any allegation that either of those triggering events has happened," the district court concluded that "any challenge to the constitutionality of electrocution is not ripe for review." *Ibid.*

Similarly, West has not challenged the district court's determination that Count Seven, which alleged a violation of West's right to access courts and counsel by prohibiting the presence of more than one attorney at an execution and denying the attorney access to a telephone, was moot. *Id.* at *22. West's opening brief refers to Count Seven, but does not offer any argument on that point. The district court concluded the claim was moot because the Defendants agreed to provide West's attorney-witness with access to a telephone during the execution, and the telephone is in the room where West's attorney will observe the execution. *Ibid.* Therefore we shall not address these arguments.

## Res Judicata

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give a prior adjudication by a state court the same preclusive effect that it would have under the law of the state whose court issued the judgment. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80–81 (1984); *Lumbard v. City of Ann Arbor*, 913 F.3d 585, 590 (6th Cir. 2019). "When [28 U.S.C.] § 1738 applies to a state court decision, both issue preclusion [collateral estoppel] and claim preclusion [res judicata] apply." *Lumbard*, 913 F.3d at 590 (citing *San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 336 (2005)). Accordingly, a judgment in Tennessee state courts has the same claim preclusive effect in federal court that the judgment would have in Tennessee's courts. *Migra*, 465 U.S. at 85; *Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 758 (6th Cir. 2003).

Res judicata is "justifiable on the broad grounds of public policy which requires an eventual end to litigation." *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976). "[R]es judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit."[2] *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (quoting *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989)). Tennessee law requires that four elements be established to assert res judicata: "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or

---

[2] Tennessee courts have used the term "res judicata" to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel). *See Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 393 (Tenn. 2009). To prevail on issue preclusion, the party must establish that the issue to be barred is (1) identical to an issue decided in an earlier proceeding that was actually raised, litigated, and decided on the merits; (2) the judgment in in the earlier proceeding has become final; (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the earlier proceeding; and (4) the party against whom issue preclusion is asserted had a full and fair opportunity in the earlier proceeding to contest the issue. *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016).

cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012); *see also Hutcherson*, 326 F.3d at 758. West does not really dispute that these elements are met by *Abdur'Rahman*. Instead, he asserts that res judicata should not apply because "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998) (citing Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982)); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985) (claim preclusion does not generally apply if the plaintiff could not seek a certain remedy because of the limitations on a court's subject-matter jurisdiction); *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 634 (6th Cir. 2014) (same).

West and the Defendants agree that Tennessee follows this "full relief" requirement. They also agree that the Tennessee chancery court lacked the jurisdiction to stay West's execution. *See Coe v. State*, 17 S.W.3d 251, 251 (Tenn. 2000); *West v. Schofield*, 380 S.W.3d 105, 109 (Tenn. Ct. App. 2012). Their dispute centers on whether this limitation barred West from obtaining full relief such that res judicata cannot block his proceedings in the district court.

West relies primarily on *Lien v. Couch*, 993 S.W.2d 53 (Tenn. Ct. App. 1998). In that case, the court considered whether a judgment in an Arkansas court was res judicata and would bar the Liens from maintaining a suit in Tennessee for claims under the Tennessee Consumer Protection Act (TCPA). *Id.* at 55. The court concluded that the Liens could not have raised the equivalent Arkansas statutory claims because the Arkansas statutes did not afford them a private right of action. *Id.* at 56–57. The court also rejected the argument that the Liens could have raised common-law claims because consumer-protection statutes provide "broader remedies" than those available at common law. *Id.* at 57. Finally, although Arkansas courts would recognize a cause of

action based on violations of the TCPA, Arkansas courts would *not* have allowed the Liens to recover TCPA remedies, such as attorney's fees, punitive damages, or treble damages. *Id.* at 58. Because the Arkansas courts "could not have awarded the Liens the same measure of relief" sought in the Tennessee proceeding, "[i]t would be unfair to preclude them from pursuing claims here that they would have been unable to pursue in the Arkansas proceeding." *Id.* at 58–59.

Applying *Lien*, West reasons that since the Tennessee chancery court could not grant him "the same measure of relief" he seeks in federal court—a stay of his execution—res judicata should not bar his § 1983 suit in federal district court. But the difference in relief sought alone does not always permit further litigation. *See In re Order to Encapsulate Native American Gravesites in Concrete and Pave Over with Asphalt*, 250 S.W.3d 873, 882–83 (Tenn. Ct. App. 2007) (when all four elements of res judicata met, the parties may not relitigate an issue because "the primary relief sought in the first case was injunctive relief and no such injunctive relief is sought in the present case"). West is effectively seeking to relitigate the same issues that *Abdur'Rahman* decided. And while the chancery court could not stay his execution, the Tennessee Supreme Court was more than capable of doing so in *Abdur'Rahman*. For that reason, we agree with the district court that West cannot avoid res judicata.

Had West and the other plaintiffs prevailed in *Abdur'Rahman*, they would have obtained a declaratory judgment concluding that pentobarbital was an available alternative, and the three-drug lethal-injection protocol posed a demonstrated risk of severe pain and thus constituted cruel and unusual punishment in violation of the Eighth Amendment. *See Abdur'Rahman*, 558 S.W.3d at 625. The chancery court had jurisdiction to enter such a judgment. Armed with that judgment, West would have been able to obtain a stay of execution from the Tennessee Supreme Court. If the defendants appealed the declaratory judgment to the Tennessee Supreme Court, then West

could have sought a stay there if necessary for the litigation to continue, because, as the prevailing party in chancery court, he would have been able to satisfy Tennessee's standard to stay an execution.[3]  *See State v. Irick*, 556 S.W.3d 686, 689 (Tenn. 2018) (Tennessee Supreme Court will stay an execution pending resolution of collateral litigation if the prisoner can prove a likelihood of success on the merits).  Alternatively, if the defendants had not appealed, they would have been bound by the declaratory judgment that West and the other plaintiffs had obtained, thus West could have avoided the three-drug protocol as a means of execution.[4]

By contrast, in *Lien*, the Liens could not have obtained the full relief available under the TCPA at any step in the Arkansas litigation.  *See* 993 S.W.2d at 57–58.  Similarly in other cases applying this rule, the party would have been barred from litigating his claims if res judicata were to apply.  *See Marrese*, 470 U.S. at 383; *W.J. O'Neil Co.*, 765 F.3d at 634; *Nestor v. Pratt & Whitney*, 466 F.3d 65, 73–74 (2d Cir. 2006).  Here, while West may have had to take an extra step to obtain a stay of execution had he prevailed in *Abdur'Rahman*, he was not prohibited from litigating his claims in chancery court for a lack of jurisdiction.

West asserts that "full relief is not available where the desired relief does not accrue until after the termination of the prior proceeding."  Brief of Petitioner-Appellant, *supra*, at 25.  The cases he relies on do not sufficiently support that proposition, and he appears to be mixing exceptions to the res judicata bar.  *See White v. White*, 876 S.W.2d 837, 839–40 (Tenn. 1994) (finding by jury that insured had not died before August 7, 1985 did not bar a finding in a later case that the insured had died before the insurance policy lapsed because the matter arose after the

---

[3] For this reason, we reject West's argument that, as the Tennessee Supreme Court had not set his execution date, it could not have stayed West's execution.

[4] Presumably West would have had grounds to seek a stay of execution if he had prevailed in chancery court and the defendants indicated they did not intend to comply with the declaratory judgment.  *See State v. Irick*, 556 S.W.3d 686, 689 (Tenn. 2018); *Coe v. State*, 17 S.W.3d 251, 251 (Tenn. 2000).

first suit had terminated); *Church v. Brown*, 470 S.W.3d 42, 46–48 (Tenn. Ct. App. 2015) (determining that the plaintiff had a "distinct common law fraud cause of action" that was not barred by claim preclusion—but was blocked by issue preclusion); *Robinson v. Okpor*, No. W2104-00030-COA-R3-CV, 2015 WL 138170, at *5 (Tenn. Ct. App. Jan 9, 2015) ("A prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred . . . .").

West next argues that res judicata should not apply because *Abdur'Rahman* was rendered without due process and the court lacked jurisdiction over him. West asserts that the district court erred by claiming that "the *res judicata* doctrine does not require it to examine whether the *Abdur'Rahman* court denied West due process in rendering its judgment, or whether it lacked jurisdiction to enter a judgment against West on a complaint to which West was not a party is also plainly incorrect." Brief of Petitioner-Appellant, *supra*, at 27–28. These arguments in West's brief are sparse, and his arguments concerning jurisdiction may not have been raised below. Regardless, West cannot prevail.

In some cases, courts have "relaxed the res judicata doctrine in circumstances in which a party has been deprived of a fair opportunity to litigate its claim." *Jackson*, 387 S.W.3d at 494. In the district court, West contended that the chancery court proceedings denied him due process because the defendants eliminated the pentobarbital protocol, which he had pleaded as an alternative, from TDOC's execution protocols a few days before trial, and the chancery court refused to consider evidence of another alternative method submitted at trial. *See West*, 2019 WL 2341406, at *11. As the district court pointed out, these issues had already been litigated in state court. *See id.* at *11–12. It agreed with the Tennessee Supreme Court that eliminating the

pentobarbital protocol shortly before trial did not deprive West of notice or opportunity to be heard, and that West and the other plaintiffs could have pleaded the alternative method—removal of vecuronium bromide—when they filed their original and amended complaints. *Id.* at 12 (citing *Abdur'Rahman*, 558 S.W.3d at 617–18, 622–23).

On the question of due process, we agree with the district court. Although TDOC altered the protocol shortly before trial, the chancery court heard testimony concerning whether TDOC could obtain pentobarbital for executions. West was able to litigate this issue. *See Abdur'Rahman*, 558 S.W.3d at 624–25. Further, as the district court pointed out, whether a proposed alternative method of execution is available does not depend on whether it is listed in a state's execution protocols. *See, e.g.*, *Bucklew v. Precythe*, 139 S. Ct. 1112, 1129–30 (2019) (discussing the viability of nitrogen hypoxia as a method of execution); *id.* at 1136 (Kavanaugh, J., concurring) ("[T]he alternative method of execution need not be authorized under current state law . . . ."); *West*, 2019 WL 2341406, at *11 ("[O]mission from a state's protocol of a particular method of execution does not prevent an inmate from alleging and proving that the method could be readily implemented.").

As to whether West was denied due process when the trial judge refused to consider a two-drug protocol by eliminating vecuronium bromide from the three-drug protocol, we conclude that this issue was fully litigated in *Abdur'Rahman*. *See* 558 S.W.3d at 621–23. The plaintiffs had an opportunity to plead this issue, and did not. The Tennessee Supreme Court also examined the issue and concluded that the chancery court did not abuse its discretion when it denied the plaintiffs' motion to amend the pleadings after the trial concluded. *Id.* at 622–23.

Similarly, West's argument concerning the lack of jurisdiction was already litigated in the Tennessee Supreme Court. *See West*, 2019 WL 2341406, at *10. Therefore, he is incorrect that the purported jurisdictional issue would bar the application of res judicata. Before the district

court, West asserted that he filed suit about the January 2018 protocol and "was not really a party to the litigation of the July 5, 2018 protocol he challenges now." *Id.* at *8. The chancery court concluded that eliminating the pentobarbital protocol was not a "substantial change" to the lethal-injection protocols, and the plaintiffs' complaint had consistently challenged the three-drug protocol. *Abdur'Rahman*, 558 S.W.3d at 617. It "clarified that, by express consent of the parties, the pleadings were amended to limit the claims to facial challenges to the constitutionality of the July 5, 2018 revised protocol." *Id.* at 612. The Tennessee Supreme Court rejected the arguments West makes here in *Abdur'Rahman*. *Id.* at 617. Although West disagrees with this ruling, that does not mean that the chancery court or the Tennessee Supreme Court lacked jurisdiction, and that res judicata cannot apply. Accordingly, we reject West's arguments. *See Durfee v. Duke*, 375 U.S. 106, 111 (1963) ("[A] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."); *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482–83 (1982); *Rainey Bros. Constr. Co., Inc. v. Memphis & Shelby Cty. Bd. of Adjustment*, 178 F.3d 1295, at *3 (6th Cir. 1999) (unpublished table decision).

**Alternate Grounds for Dismissing Counts One, Five, and Six of West's Complaint**

Finally, several alternative grounds exist for dismissing counts one, five, and six of West's complaint. In Count One, West posits that execution by the current three-drug protocol violates his rights under the Ex Post Facto Clause by subjecting him to a harsher punishment than execution by electrocution. We, however, recently rejected that argument in *Miller v. Parker*, 910 F.3d 259 (6th Cir. 2018), and decline to depart from our precedent here. *Id.* at 261 (holding that "[a] change in a State's method of execution will not constitute an ex post facto violation if the evidence shows

the new method to be more humane" and that the three-drug protocol has not been shown to be less humane than electrocution).

In Count Six, West contends that the state is violating his rights by compelling him to choose one form of execution over another. However, we also rejected this argument in *Miller*. *Id*. at 261–62. Because we have "concluded that neither of these methods [of execution] violate[] the Constitution," West's coercion argument must fail. *Ibid*.

Finally, in Count Five West argues that the death penalty itself violates the Eighth Amendment. The Supreme Court, however, has repeatedly held capital punishment to be constitutional, even as recently as this year. *See Bucklew*, 139 S. Ct. at 1122 ("The Constitution allows capital punishment."). Thus this argument fails, as well.

Because we affirm the district court's order, we deny West's motion for a stay of execution. The judgment of the district court is affirmed.

**KAREN NELSON MOORE, concurring in the judgment**. West argues that the doctrine of claim preclusion should not apply to bar his claims regarding the constitutionality of Tennessee's three-drug lethal-injection protocol because he could not obtain full relief in the declaratory-judgment action in *Abdur'Rahman v. Parker*, 558 S.W.3d 606 (Tenn. 2018)*, cert. denied, Abdur'Rahman v. Parker*, 139 S. Ct. 1533 (2019); *Miller v. Parker*, 139 S. Ct. 626 (2018); *Zagorski v. Parker*, 139 S. Ct. 11 (2018). Although the trial-level chancery court that tried West's state case challenging Tennessee's lethal-injection protocol did not have the authority to grant injunctive relief staying West's execution, the Tennessee Supreme Court would have had that power had it determined that his challenge to the lethal-injection protocol was meritorious. The Tennessee Supreme Court has stated that inferior Tennessee courts may not enjoin execution orders issued by the Tennessee Supreme Court. *West v. Schofield*, 380 S.W.3d 105, 109 (Tenn. Ct. App. 2012) ("The supreme court agreed with the trial court and this Court that the trial court was without authority to stay the supreme court's order."); *see also Coe v. Sundquist*, No. M2000-00897-SC-R9-CV (Tenn. Apr. 19, 2010) (Order). The Tennessee Supreme Court, however, alters its own execution orders in the context of collateral civil litigation challenging the constitutionality of execution protocols. *See, e.g., Schofield*, 380 S.W.3d at 109 (noting that the Tennessee Supreme Court "reset the date of Mr. West's execution" in the course of his prior civil challenge to the method of execution). West could have obtained injunctive relief in the form of a stay of execution from the Tennessee Supreme Court. *West v. Ray*, No. M2010-02275-SC-R11-CV, 2010 Tenn. LEXIS 1072, *3 (Tenn. Nov. 6, 2010) (Tennessee Supreme Court staying execution date of November 9, 2010, and remanding to the chancery court to "tak[e] proof and issu[e] a declaratory judgment" on the constitutionality of the execution protocol so that the supreme court would have a better record upon which to decide the case); *see also* TENN. R. APP. P. 36(a) ("The Supreme

Court . . . may grant any relief, including giving of any judgment and making of any order . . . ."). I therefore conclude that the application of claim preclusion is appropriate here because full relief would have been available to West had he been successful in his 2018 challenge in state court.

Bound as I am by *Glossip v. Gross*, 135 S. Ct. 2726 (2015), *Baze v. Rees*, 553 U.S. 35 (2008), and our en banc decision in *In re Ohio Execution Protocol*, 860 F.3d 881 (6th Cir. 2017), (in which I filed a dissent), I must concur in the judgment affirming the district court's judgment here, resolving West's case on claim preclusion grounds before reaching its troubling merits. West could have initially presented and litigated alternatives to the Tennessee three-drug lethal-injection protocol in the state-court litigation, including any methods that he and the other plaintiffs there thought preferable. When the plaintiffs there sought to amend the pleadings to advocate a two-drug protocol (eliminating the paralytic drug), the trial court and then the Tennessee Supreme Court rejected that effort on grounds of delay. *Abdur'Rahman*, 558 S.W.3d at 621–23. Unfortunately for West, principles of claim preclusion asserted as a defense by Defendants apply here, and West has not argued on appeal that changed circumstances or new facts give rise to an exception rendering claim preclusion inapplicable. *See West v. Parker*, No. 3:19-cv-00006, 2019 WL 2341406, at *13 (M.D. Tenn. June 3, 2019) (analyzing West's argument that new facts prevented the application of claim preclusion); *Creech v. Addington*, 281 S.W.3d 363, 381 (Tenn. 2009) ("The doctrine of res judicata 'extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same question between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants.'" (quoting *Banks v. Banks*, 77 S.W.2d 74, 76 (Tenn. Ct. App. 1934))).